

# NOTE

**State of Pennsylvania**
MERS MIN:

FHA Case No.

June 22, 2011
[Date]

Brennan, Margaret

109 E Manoa Rd
Havertown, PA 19083-4730
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means Quicken Loans Inc.

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of One Hundred Ninety Nine Thousand Eight Hundred Three and 00/100

Dollars (U.S. $ 199,803.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of Four and Three-Quarters percent (          4.750 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on August       , 2011       . Any principal and interest remaining on the first day of       July       , 2041       , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at P.O. Box 6577, Carol Stream, IL  60197 or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,042.27          . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

FHA Pennsylvania Fixed Rate Note - 10/95
Wolters Kluwer Financial Services
VMP®-1R(PA) (0707)
Page 1 of 2



Initials:

**6. BORROWER'S FAILURE TO PAY**

    **(A) Late Charge for Overdue Payments**

        If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of Four and No-Thousandths      percent (          4.000%) of the overdue amount of each payment.

    **(B) Default**

        If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

    **(C) Payment of Costs and Expenses**

        If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

    Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

    Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

    Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

This is a contract under seal and may be enforced under 42 PA. C.S. Section 5529(b).

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

| | | |
|---|---|---|
| _Margaret J. Brennan_ 06/22/201(Seal) | _Jeffrey A. Brennan_ 06/22/2011 (Seal) | |
| Margaret J. Brennan -Borrower | Jeffrey A. Brennan -Borrower | |
| _Robert J. Brennan, Sr._ 06/22/201(Seal) | _Antoinette M. Brennan_ 06/22/2011 (Seal) | |
| Robert J. Brennan, Sr. -Borrower | Antoinette M. Brennan -Borrower | |

**WITHOUT RECOURSE**
Pay To the Order of _____ (Seal)
                             -Borrower
Bank of America, NA

QUICKEN LOANS INC. _____ (Seal)
By _____           -Borrower
    SCOTT JOHNSON
    CAPTURE MANAGER

**PAY TO THE ORDER OF**

**WITHOUT RECOURSE**
BANK OF AMERICA, N.A. _____ (Seal)
                             -Borrower
BY: _Sean Headley_
    SEAN HEADLEY
ASSISTANT VICE PRESIDENT _____ (Seal)
                             -Borrower

# EXHIBIT B

RD BK04954-0325

MG-MORTGAGE

2011037477    06/23/2011 02:29:53 PM:4

RCD FEE: $119.50

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

Record and Return to.
Land Services USA, Inc.
602 E Baltimore Pike
Media PA 19063

Prepared By
Chondra Coffer
27555 Farmington Road, Suite 300
Farmington, MI  48334

Return To·
Document Management
Quicken Loans Inc
1050 Woodward Ave
Detroit, MI  48226-1906

Parcel Number:

Premises:
109 E Manoa Rd
Havertown, PA 19083-4730

## Mortgage

**Commonwealth of Pennsylvania**

FHA Case No.

MIN

THIS MORTGAGE ("Security Instrument") is given on    June 22, 2011    The Mortgagor is
Margaret J. Brennan, Jeffrey A. Brennan, wife and husband,
Robert J. Brennan, Sr., and Antoinette M. Brennan, husband and wife

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc.

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 1 of 12

("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and MERS has a mailing address of P.O. Box 2026, Flint, MI 48501-2026 and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is ▮▮▮▮▮-MERS.

Quicken Loans Inc.                                                                          ,
("Lender") is organized and existing under the laws of          the State of Michigan     , and has an address of 1050 Woodward Ave, Detroit, MI  48226-1906

                                                                                    . Borrower
owes Lender the principal sum of  One Hundred Ninety Nine Thousand Eight Hundred Three and 00/100
Dollars (U.S. $  199,803.00       ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on    July 1, 2041   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in
                Delaware                    County, Pennsylvania·

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.

which has the address of 109 E Manoa Rd                                              [Street]
                Havertown                    [City], Pennsylvania 19083-4730      [Zip Code]
("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 2 of 12

ALL THAT CERTAIN lot or piece of land with the buildings and improvements thereon erected, situate in the Township of Haverford, County of Delaware and Commonwealth of Pennsylvania described according to a Survey and Plan made by Damon & Foster, Civil Engineers, Sharon Hill, PA dated July 18, 1951 and last revised November 5, 1951 as follows, to wit:

BEGINNING at a point on the Southeasterly side of Manoa Road (46 feet wide) which point is measured North 68 degrees 40 minutes 30 seconds East 486.63 feet from a point, which point is measured on the arc of a circle curving to the right having a radius of 40 feet the arc distance of 82 73 feet from a point on the Northeasterly side of Twin Oaks Drive (50 feet wide).

CONTAINING in front or breadth on said Manoa Road 55 feet and extending of that width in length or depth Southeastwardly between lines at right angles to the said Manoa Road 109.99 feet.  The Southwesterly line thereof partly passing through the bed of a certain driveway which extends Northwestwardly into Manoa Road

BEING Lot No. 353 on said Plan.

BEING House No. 109 Manoa Road

TOGETHER with the free and common use, right, liberty and privilege of a certain driveway and automobile turntable with the owners, tenants and occupiers of the adjoining premises as and for a driveway, passageway, watercourse and turntable at all times hereafter, forever   Subject, however, to the proportionate part of the expense of keeping said driveway and automobile turntable in good order and repair.

granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows

UNIFORM COVENANTS

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either· (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds "

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 3 of 12

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
    First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
    Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
    Third, to interest due under the Note;
    Fourth, to amortization of the principal of the Note; and
    Fifth, to late charges due under the Note.

4.  **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 4 of 12

all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If

failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

   **(a)  Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if

   (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   **(b)  Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 6 of 12

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)  Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary

**(e)  Mortgage Not Insured** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 7 of 12

Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

14. **Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

FHA Mortgage with MERS - PA
VMP ®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 8 of 12

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower· (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence.**

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 9 of 12

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq* ) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.**

19. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. **Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

21. **Reinstatement Period.** Borrower's time to reinstate provided in paragraph 10 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument

22. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

23. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider                ☐ Growing Equity Rider         ☒ Other [specify]
☐ Planned Unit Development Rider   ☐ Graduated Payment Rider      Legal Attached

---

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 10 of 12

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

**Borrower**

_____  06/22/2011 _____
Margaret J. Brennan                        **Date**
                                           **(Seal)**


_____  06/22/2011 _____
Jeffrey A. Brennan                         **Date**
                                           **(Seal)**

_____  06/22/2011 _____
Robert J. Brennan, Sr.                     **Date**
                                           **(Seal)**


_____  06/22/2011 _____
Antoinette M. Brennan                      **Date**
                                           **(Seal)**


☐   Refer to the attached *Signature Addendum* for additional parties and signatures.

---

FHA Mortgage with MERS - PA                              Revised 4/96 Amended 6/02
VMP ®                                                    VMP4N(PA) (1010).01
Wolters Kluwer Financial Services                        Page 11 of 12

**Acknowledgment**

**State of** Pennsylvania

**County of**          Delaware

On     June 22, 2011     , before me,   *Sharon Foley*                    , the
undersigned officer, personally appeared Margaret J. Brennan, Jeffrey A.
Brennan, wife and husband, Robert J Brennan, Sr , and Antoinette M Brennan.
husband and wife

known to me, (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within
instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
SHARON FOLEY, Notary Public
West Chester Boro, Chester County
My Commission Expires August 7, 2012

_____
*Notary Public*

*My commission expires:*

**Certificate of Residence**

I,     *Sharon Foley*                         , do hereby certify that the
correct address of the within-named Mortgagee is 1901 E Voorhees Street, Suite C, Danville, IL 61834.

Witness my hand this  22nd day of  *June  2011*

_____
Agent of Mortgagee

FHA Mortgage with MERS - PA
VMP®
Wolters Kluwer Financial Services

Revised 4/96 Amended 6/02
VMP4N(PA) (1010).01
Page 12 of 12

# EXHIBIT C

Recording Requested By:
**Bank of America**
Prepared By:
**Diana De Avila**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-0823**

DocID#
Tax ID:
Property Address:
**109 E Manoa Rd**
**Havertown, PA 19083-4730**
Property Location:
**Township of HAVERFORD**

RD BK05463-0255                    AS-ASSIGNMENTS
2014006852    02/12/2014 02:20:07 PM:3
RCD FEE: $66.50

                                                    DELAWARE
                                                    COUNTY
                THOMAS J. JUDGE SR. ROD

MIN #:                                     MERS Phone #:  888-679-6377

This ____ for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** (herein "Assignor"), whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** and **P.O. Box 2026, Flint, MI 48501-2026, AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS** hereby assign and transfer to **BANK OF AMERICA, N.A** (herein "Assignee"), whose address is **C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063**, and its successors and assigns all its right, title, and interest in and to a certain Mortgage described below.

Beneficiary:              **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**

Mortgagor(s):             **MARGARET J. BRENNAN, JEFFREY A. BRENNAN, WIFE AND HUSBAND, ROBERT J. BRENNAN, SR., AND ANTOINETTE M. BRENNAN, HUSBAND AND WIFE**

Date of Mortgage:  **6/22/2011**      Original Loan Amount:  **$199,803.00**

Recorded in **Delaware County, PA** on: **6/23/2011, book RD 04954, page 0325** and instrument number **2011037477**

This Mortgage has not been assigned unless otherwise stated below:

                              **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR QUICKEN LOANS INC., ITS SUCCESSORS AND ASSIGNS**

                              By: _____

                              _____
                              **Mercedes Judilla**
                              **Assistant Secretary**
                              Date    **JAN 23 2014**

State of **California**
County of **Ventura**

On __JAN 2 3 2014__ before me, __Jacqueline Benson_____, Notary Public, personally appeared
_____Mercedes Judilla_____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

```
JACQUELINE BENSON
Commission # 1963212
Notary Public - California
Los Angeles County
My Comm. Expires Dec 9, 2015
```

_Jacqueline Benson_
Notary Public: ____Jacqueline Benson_____    (Seal)
My Commission Expires: __Dec. 9, 2015__

I hereby certify that the address of the within named assignee is:
C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063

_____
Signature

DocID#

# EXHIBIT

# D

RD BK05687-0603                          AG-AGREEMENTS
2015043215      08/13/2015 09:40:49 AM:2
RCD FEE: $53.00

DELAWARE
COUNTY

THOMAS J. JUDGE SR. ROD

Investor Loan #

When Recorded Return To:

Bank of America, N.A.
11802 Ridge Parkway, Ste 100 HRM
Broomfield, CO 80021
*Prepared by: Robert Calvert*
Recording Requested By:

Bank of America, N.A.

Document No.:

ORIG.MTG $ _199,803.00_

NEW MTG $ _142,717.67_

NEW MONEY $ _0.00_

*APN:*

_____ Space Above for Recorder's Use _____

## LOAN MODIFICATION AGREEMENT
(FHA Insured) (FHA-HAMP with Partial Claim)

Borrower ("I"):  Jeffrey A Brennan and Margaret J Brennan

Lender or Servicer ("Lender"): Bank of America, N.A.

Date of first-lien mortgage, deed of trust, or security deed ("Mortgage") and Note
("Note"): June 22, 2011

FHA Loan Number

Property Address ("Property"): 109 E Manoa Rd, Havertown, PA 19083
*Prev. Rec. Info: 6/23/2011, BK: RD 04954, PG: 0325,
Inst. #: 2011037477*

See attached Exhibit "A" for Legal Description

Recording information: Mortgage dated _6/22/20 11_, in principal sum of _$199,803.00_, and recorded in _Delaware , PA_ (County and State or Other Jurisdiction) on _6/23/2011_, in Liber/Book _RD 04954_, Page(s) _0 325_, Instrument Number _2011037477_.

Important Disclosures: The Federal Housing Administration (FHA) requires that Lender provide you with information to help you understand the modified mortgage and partial claim terms that are being offered to you. Lender must timely provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage and partial claim to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 are still true in all material respects and if I have satisfied all of the preconditions in Section 2, this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, modify (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are called the "Loan Documents." If there is more than one borrower or mortgagor executing this document, each is referred to as "I," "my" includes "our," and the singular includes the plural and vice versa. Capitalized terms used in this Agreement and not otherwise defined have the meanings set forth in the Mortgage and/or Note, as applicable.

**1.** My Representations. I certify, represent to Lender, and agree:

A.   I am experiencing a financial hardship caused by a verifiable loss of income or increase in living expenses. As a result, (1) I am in default under the Loan Documents and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.

B.   I live in, and plan to continue to live in, the Property as my principal residence. The Property has not been condemned and has no material adverse physical condition(s). The Property has no more than four units.

C.   I am not a borrower on any other FHA-insured mortgage.

D.   Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property after I signed the Loan Documents.

E.   Under penalty of perjury, I provided Lender with full and complete information that, when provided, accurately stated my income, expenses, and assets. To the extent requested by Lender, I provided documents that supported that information. However, I was not required to disclose child support or alimony, unless I chose to rely on such income to qualify for the FHA-Home Affordable Modification Program ("Program") or for another loss mitigation option.

F.   I have made the trial period plan payments required under the Program.

G.   I currently have sufficient income to support the financial obligations under the Loan Documents, as modified by this Agreement.

2.   Acknowledgements and Preconditions to Modification. I understand, acknowledge, and agree:

A.   As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the FHA's required subordinate mortgage loan (also called a Partial Claim Note and Security Instrument). I have reviewed and approved the terms of such subordinate loan.

B.   Lender has no obligation to make any modification of the Loan Documents if I any of the requirements under this Agreement has not been met.

C.   Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

D.   The Loan Documents will not be modified unless and until (1) Lender approves this Agreement and (2) the Modification Effective Date (as defined in Section 3 below) has occurred.

3.   The Modification. I understand, acknowledge, and agree:

A.   If all of my representations in Section 1 above continue to be true and correct and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on July 1, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. If I have failed to make any payments that are a precondition to this modification, this modification will not take effect.

B.   The new Maturity Date will be June 1, 2045.

C.   The new principal balance of my Note will be $142,717.67 (the "New Principal Balance"). In servicing your loan, the Bank may have incurred third-party fees or charges that were not included in the terms of this Agreement. If so, these fees and charges will appear on your monthly statement under "Fees and Charges." These fees and charges will not accrue interest or late fees. You may pay these fees and charges at any time. If not previously paid, you must pay these fees and charges at the earliest of (1) the date you sell or transfer an interest in the Property, (2) the date you pay the entire New Principal Balance, or (3) the Maturity Date.

D.  I promise to pay the New Principal Balance, plus interest, to the order of Lender.

E.  The annual interest rate on the New Principal Balance will be 4.000%, beginning June 1, 2015, both before and after any new default. This fixed interest rate will remain in effect until the principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

F.  On July 1, 2015 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $1,443.66 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $681.36, plus the current required escrow payment of $762.30. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

G.  I will be in default if I do not comply with the terms of the Modified Loan Documents.

**4.**  Additional Agreements. I understand and agree:

A.  I accept the risks of entering into this Agreement. These risks include (but are not limited to):

(1)  The FHA's subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The FHA's subordinate lien may also make it more difficult to get additional subordinate lien financing.

(2)  My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

B.  I authorize Lender to attach an Exhibit A to this loan modification, which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk (or other recordation office) to allow for recording if and when Lender seeks recordation.

C.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender waived this requirement in writing.

D.  This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

E.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect and I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

F.  The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

G.  I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable.  The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

H.  I know that I am only entitled to loss mitigation terms that comply with the Program.  Therefore, if Lender discovers any error in the terms of this Agreement or in the FHA's required subordinate mortgage loan, I authorize the Lender to advise me of the error.  If I do not accept the corrected terms, at Lender's option, this Agreement becomes void and of no legal effect.  If I accept the corrected terms, I will execute and promptly return to Lender the revised and additional documents that will (1) consummate the intended terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement").  If I do not sign and deliver a Corrected Agreement or any additional document required by Lender to comply with the Program, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I may not be eligible for the Program.

I.  Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information").  In addition, I consent to the disclosure of my Personal Information and the terms of the trial period plan and this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Program, and (3) any HUD-certified housing counseling agency.

J.    If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents"). I will deliver the Replacement Documents to Lender within ten days after I receive Lender's written request for such Replacement Documents.

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

SIGN
HERE    _Jeffrey A Brennan_
Jeffrey A Brennan
(Must Be Signed Exactly As Printed)

_07|10|2015_
MM/DD/YYYY

SIGN
HERE    _Margaret J. Brennan_
Margaret J Brennan
(Must Be Signed Exactly As Printed)

_07|10|2015_
MM/DD/YYYY


_____[Space below this line for Acknowledgement]_____

STATE OF _Pennsylvania_
COUNTY OF _Delaware_

On the _10th_ day of _July_ in the year _2015_ before me, _MARJORIE E. DONOHUE_ Notary Public, personally appeared Jeffrey A Brennan and Margaret J Brennan, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_Marjorie EDonm_ ___Notary Signature

_MARJORIE E. DONOHUE____Notary Public Printed Name Please Seal Here

_August 18, 2016____Notary Public Commission Expiration Date

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Marjorie E. Donohue, Notary Public
Haverford Twp., Delaware County
My Commission Expires Aug. 18, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

DO NOT WRITE BELOW THIS LINE.
**********************************************************************************
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
   By: Urban Settlement Services, LLC, its attorney in fact

By: _Zachary Camp_                     Dated: **AUG 0 3 2015**

Name:      **ZACHARY CAMP**
Title  :    **ASSISTANT SECRETARY**

_____[Space below this line for Acknowledgement]_____

STATE OF _Colorado_
COUNTY OF _Broomfield_

On _3_ day of _Aug._ in the year _2015_ before me, ___**CONNIE SANCHEZ**___
Notary Public, personally appeared _____**ZACHARY CAMP**_____
Assistant Secretary of Urban Settlement Services, LLC., attorney in fact for Bank of
America, N.A., personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_Connie Sanchez_____Notary Signature

___**CONNIE SANCHEZ**_____Notary Public Printed Name Please Seal Here

___**JAN 1 3 2019**_____Notary Public Commission Expiration Date

> CONNIE SANCHEZ
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20154001686
> COMMISSION EXPIRES JAN. 13, 2019

# EXHIBIT A

## LEGAL DESCRIPTION

ALL THAT CERTAIN lot or piece of land with the buildings and improvements thereon erected, situate in the Township of Haverford, County of Delaware and Commonwealth of Pennsylvania described according to a Survey and Plan made by Damon & Foster, Civil Engineers, Sharon Hill, PA dated July 18, 1951 and last revised November 5, 1951 as follows, to wit:

BEGINNING at a point on the Southeasterly side of Manoa Road (46 feet wide) which point is measured North 68 degrees 40 minutes 30 seconds East 486.63 feet from a point, which point is measured on the arc of a circle curving to the right having a radius of 40 feet the arc distance of 82.73 feet from a point on the Northeasterly side of Twin Oaks Drive (50 feet wide).

CONTAINING in front or breadth on said Manoa Road 55 feet and extending of that width in length or depth Southeastwardly between lines at right angles to the said Manoa Road 109.99 feet. The Southwesterly line thereof partly passing through the bed of a certain driveway which extends Northwestwardly into Manoa Road

BEING Lot No. 353 on said Plan.

BEING House No. 109 Manoa Road

TOGETHER with the free and common use, right, liberty and privilege of a certain driveway and automobile turntable with the owners, tenants and occupiers of the adjoining premises as and for a driveway, passageway, watercourse and turntable at all times hereafter, forever   Subject, however, to the proportionate part of the expense of keeping said driveway and automobile turntable in good order and repair.